RUTLAND SAVINGS BANK v. G. W. ISBELL ET AL.

No. 7628. Decided July 9, 1941.
Rehearing overruled October 8, 1941.
(154 S. W., 2d Series, 442.)

*Renfro & Kilgore,* of Dallas, for plaintiff in error, Rutland Saving Bank.

A judgment in a title action must be filed for record with the County Clerk of the county in which the land is situated before it will be effective against an innocent purchaser. Holmes v. Buckner, 67 Texas 107, 2 S. W. 452; Hemphill v. Watson, 60 Texas 679; Nevels v. Harris, 129 Texas 190, 102 S. W. (2d) 1046.

On the question of notice. First Texas Joint Stock Land Bank v. Chapman, 48 S. W. (2d) 651; Alexander v. Wilson, 124 Texas 392, 77 S. W. (2d) 873; Heidenheimer Bros. v. Stewart, 65 Texas 321.

On the matter of homestead rights. Parrish v. Hawes, 95 Texas 185, 66 S. W. 209; Purdy v. Grove, 35 S. W. (2d) 1078.

*Moore & Moore,* of Paris, and *Sam K. Hocker,* of Clarksville, for G. W. Isabell, et al.

Where an estate of minors consist in an undivided interest in encumbered property, neither the renewal of the indebtedness and lien by the other joint owners or by the guardian will bind the interest of the minors, unless the relationship between the joint owners is that of partners; or the debt and lien are unquestionably valid; or the original obligation has been presented, allowed and approved as a claim against the minor's estate. 20 R. C. L., 806, sec. 8; Phillips v. Texas Loan Agency, 63 S. W. 1080; Dilliard v. Duke, 107 S. W. (2d) 414 (Homestead interest) ; Fest v. Williams, 89 S. W. (2d) 1072.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

Two applications for writs of error were filed in this case, one by Rutland Savings Bank and the other by the other parties, who may collectively be referred to as the Isbells, and both applications were granted. From this it results that each party here is both plaintiff in error and defendant in error. We shall, therefore, refer to the parties by their names rather than as plaintiffs in error and defendant in reror.

This suit was filed in the district court of Red River County by Rutland Savings Bank against the Isbells and against Scott Title & Trust Company and J. T. Tucker. The bank's petition was in two counts. In the first count it sought title and possession of certain lands situated in that county and in the second count it alleged in substance that, if title to said lands had not been perfected in it, then it was the owner and holder of a first lien against the lands to secure a note in the principal sum of $23,000, and judgment was sought foreclosing such lien. No recovery was allowed on the first count of the petition and only a partial recovery was allowed on the second count. The Court of Civil Appeals affirmed the judgment of the trial court denying recovery on the first count and modified that judgment so as to enlarge the recovery on the second count and remanded the cause to the trial court with instructions to enter judgment in accordance with its opinion. 129 S. W. (2d) 505.

After a more thorough consideration of the case since its submission than we were able to give it upon the application

for writ of error, we have concluded that same was correctly decided by the Court of Civil Appeals. In view, however, of certain arguments advanced here it seems desirable that we write further on a few of the questions presented. The statement of the general nature of the case made by the Court of Civil Appeals is found to be accurate and concise and we, therefore, quote it. It is as follows:

"The litigation arose out of the following transactions:— In 1914 R. Isbell and wife conveyed to their four sons, Sam R., John D., Jim A., and G. W. Isbell, all unmarried, the land described in the pleadings. In this conveyance these sons assumed the payment of certain vendor's lien notes theretofore executed by the father in part payment of the land which he had purchased from Tucker. They each acquired an undivided 1/4 interest as their separate estate.

"In 1915, in renewal and extension of the balance due on said notes, the sons, who were still single, executed a note for $7,000 payable to Luther Reece, the then legal holder and owner of the said notes and liens securing them. They also executed a deed of trust on this land to better secure its payment. The sons executed a note for $15,000 payable to one W. H. Evans, and on March 21, 1923, joined by their wives (having married in the meantime), executed a deed of trust on this land to secure the payment of this note. This $15,000 was used by them for machinery and labor costs in constructing a levee upon the land in controversy and other adjacent lands owned by them.

"On October 11, 1923, in renewal and extension of above two notes, the sons, joined by their wives, executed a $23,000 note and a deed of trust on the land in controversy, payable to and in favor of D. H. Scott & Son. The Reece and the Evans notes, together with the respective liens, were assigned to D. H. Scott & Son. This $23,000 note was then assigned to appellant, for a valuable consideration, before its maturity. In connection with the last-mentioned transaction the sons executed five notes for the aggregate sum of $2,300, payable to the Scotts which represented 2% interest on the loan and constituted the commission which the Scotts expected to make out of the loan transaction.

"The $23,000 note assigned to appellant being unpaid at its maturity, January 21, 1929, was re-transferred to Scott & Son. On March 30, 1930, Jim A. Isbell and John D. Isbell, joined

by their wives, G. W. Isbell, then a widower, and G. W. Isbell, Guardian of the Estate of Billie W. Isbell and Sylvia L. Isbell, Minors, and Edith Isbell, surviving wife of Sam R. Isbell, executed in renewal and as extension of the $23,000 note four notes of $1,000 each, and one note for $19,000 payable to Scott Title & Trust Company, being the note sued upon in Count Two. They also extended a deed of trust on the land to secure these notes. The notes and lien were immediately transferred to appellant. As part of the extension last mentioned, notes in the total sum of $1,050 were executed to cover 1% of the interest on above note, and a second lien deed of trust executed to secure same. The interest notes were retained by Scott Title & Trust Company. Default being made in the payment of the interest note, the trustee sold said land on February 6, 1934, under the provisions of this second lien deed of trust. The trust company bought the land at the sale and received a deed to same. Thereupon the land was rented by the trust company to the Isbells for the year 1934, on the rental terms of 1/3 of the grain and 1/4 of the cotton and seed grown for that year.

"The notes held by appellant also being in default, suit was filed by it in a Dallas county district court to recover the amount due thereon and for foreclosure of its first deed of trust lien. Appellant established its debt and lien in the Dallas court and took a default judgment foreclosing its lien against only Scott Title & Trust Company and Tucker. This suit was reduced to judgment on May 7, 1935, which was subsequent to the date of the Trustee's sale under the second lien deed of trust. Under order of sale issued out of the Dallas court the appellant purchased the land in controversy on August 6, 1935."

**1, 2** We consider first a question presented by Rutland Savings Bank. It is that the courts below erred in holding that it was not entitled, as a matter of law, to recover title to the land upon the first count of its petition. It appears that the sale by the trustee to the Scott Title & Trust Company was regular and transferred title to such company. Thereafter, in the bank's foreclosure suit in Dallas County it made Scott Title & Trust Company, J. T. Tucker and the Isbells parties defendant. The Isbells filed pleas of privilege, whereupon they were dismissed from the suit. The judgment rendered in that case was against the Scott Title & Trust Company and Tucker. It established the amount of the debt owing to the bank and decreed a foreclosure of its lien on the land securing same. That judgment was not binding on the Isbells. Thereafter, the

bank became the purchaser of the land at the sheriff's sale under order of sale issued pursuant to that judgment. In the meantime, however, the Isbells had been awarded a judgment in the district court of Red River County against the Scott Title & Trust Company for the title and possession of this land. This latter judgment was rendered one day before the sale under the Dallas County judgment at which the bank became the purchaser, but was not filed for record with the county clerk. Upon such statement of facts the bank contends that it acquired title to the land as an innocent purchaser for value.

Article 6638, R. C. S., reads as follows:

"Every partition of land made under an order or decree of a court, and every judgment or decree by which the title to land is recovered shall be duly recorded in the office of the county clerk in which such land may lie; and until so recorded, such partition, judgment or decree shall not be received in evidence in support of any right claimed by virtue thereof."

In Permian Oil Co. v. Smith, 129 Texas 413, 107 S. W. (2d) 564, it was held that the above article is a registration statute, and that, as against an innocent purchaser, the judgment or decree by which title to land is recovered must be recorded in the deed records of the county in which the land lies in order to be effective. It was further held in that case that the burden was upon the person claiming under the judgment to establish that a purchaser claiming adversely to the rights of the judgment holder either had notice of the judgment or did not pay value for the land. Based upon that decision it is the contention of the bank that it was protected as an innocent purchaser of the land in controversy. The facts with reference to this matter were not fully developed upon the trial of the case, but we have concluded that we would not be authorized to hold, as a matter of law and contrary to the conclusions of the courts below, that the bank had no notice of the claim of the Isbells. It is not shown when the Isbells' suit against Scott Title & Trust Company was filed. It is shown that when the Isbells were sued by the bank in Dallas County they filed pleas of privilege and were then dismissed by the bank from the case, and that they were at that time, and continued to be, in possession of the land. It is true that as between the Isbells and the Scott Title & Trust Company there had been established in 1934 the relationship of landlord and tenant, but the fact that a judgment for title was rendered

in favor of the Isbells in 1935 against that company indicates that that relationship had been repudiated or changed and their possession had probably become hostile and such as to put the bank upon inquiry as to the character of their claim. We cannot hold, as a matter of law, that the bank had no notice of the title of the Isbells.

In the trial court the Isbells defended the second count of the petition, in which a foreclosure of the lien was sought, on the ground that the property constituted the homesteads of the four sons and their families at all relevant times, and that same was not subject to a valid lien to secure the debt represented by the note. The Court of Civil Appeals held that to the extent that the note represented an extension and renewal of the vendor's lien notes, the lien was valid as to all of the land. No complaint is made of that holding. With respect to the one-fourth interest of G. W. Isbell that court held that all of such interest was subject to the 1930 deed of trust lien to the extent of the full amount due thereon. That holding was based upon the fact that G. W. Isbell was a widower when he executed the 1930 renewal. No attack is made upon that holding. That court further held that the interests of Jim A. Isbell and Sam R. Isbell were subject to the lien to the full amount thereof on the ground that they were estopped to set up the homestead defense. The facts upon which the holdings with reference to those interests were based were clearly stated in the court's opinion. We approve such holdings and the grounds upon which they were based and perceive no reason for writing further with reference thereto.

3 The Court of Civil Appeals held with reference to the interest of John D. Isbell that no estoppel operated against his defense of homestead. Accordingly it held that his undivided one-fourth interest was subject only to that portion of the lien which represented a renewal and extension of the vendor's lien notes. Its decision was based upon the principle announced in the well known case of Texas Land & Loan Co. v. Blalock, 76 Texas 85, 13 S. W. 12, to the effect that a lender cannot shut his eyes to the fact of actual possession and use of property as a home. The bank insists here that the facts do not bring the John D. Isbell interest within the scope of that rule. 428 acres of the land in question are bottom lands subject to overflow and unsuitable for residential purposes. The other land in issue is a 34 acre tract situated on a ridge about three-fourths mile distant from the larger tract. There was some

evidence that John D. Isbell and family were living on the 34 acre tract and cultivating the bottom land on the date of the execution of the deed of trust lien to Evans above referred to as well as thereafter. They made homestead designations which covered other lands, not including any of the land in suit and executed a deed of trust lien which covered the 34 acre tract along with the overflow land. The bank claims that, even though its deed of trust lien except as to the purchase money notes was invalid as to the 34 acres, it was nevertheless good as to the John D. Isbell interest in the bottom lands, although it, in fact, was a part of his homestead, on the doctrine of estoppel. We overrule that contention. The representation relied upon as establishing an estoppel was that neither the 34 acres nor the bottom land was their homestead. Since the courts below have found that the John D. Isbell family were actually living on the 34 acres as a homestead at that time, the lender should not have relied upon the affidavit at all. The basis of estoppel in a case of this kind is a reliance upon a statement and not a reliance upon one portion of a statement when the other portion thereof is known to be untrue.

4 We approve the holding of the Court of Civil Appeals on the question of limitation as applied to the minor heirs of Sam R. Isbell. The Isbells claim that the renewal of the notes as to the interest of said minors by the other joint owners and by the guardian of the minors did not bind their interest. The proposition of law asserted by them is that such renewal will not have that effect unless the debt and lien are unquestionably valid. They contend that the validity of the lien as to that particular interest is dubious. We are not in agreement with that conclusion. On the contrary, we think that the debt and lien were unquestionably valid as to Sam R. Isbell and his estate. Otherwise, we would not have approved the holding of the Court of Civil Appeals that the plea of estoppel was good as to that interest.

John D. Isbell presents this contention: As disclosed above, it was held by the Court of Civil Appeals that the lien in its entirety was valid as to an undivided three-fourths interest in the property, but that as to the one-fourth undivided interest owned by John D. Isbell, the lien was valid only to the extent of the amount due on the renewed purchase money notes. The Court of Civil Appeals instructed the trial court to enter judgment foreclosing the lien as against the entire property only to the extent of the amount due on the vendor's

lien notes, then to foreclose the lien as to all of the defendants except the John D. Isbell's one-fourth interest to satisfy the balance of the indebtedness. John D. Isbell insists that he has no protection of his homestead rights under such judgment unless this court shall define the terms upon which his undivided interest will be vested in him free of liens. His position is stated in this language:

"* * * The rights of both parties can easily be protected by directing that upon payment by John D. Isbell to Rutland Savings Bank of 1/4 of the amount due on the merged and renewed vendor's lien note, his interest will be released to him, if upon sale of the remaining 3/4 of the property enough is realized to make a total equal to the amount of the vendor's lien."

5 This seems to contemplate that the order of sale should provide that the sheriff first sell a three-fourths interest and that if it should bring as much as three-fourths of the amount owing for purchase money, then the sheriff would be directed to permit John D. Isbell to pay him one-fourth of the amount owing for purchase money, whereupon his interest would not be sold. On the other hand, should the three-fourths interest bring less than three-fourths of the purchase money judgment or should John D. Isbell fail at that time to pay one-fourth of the purchase money debt, that no sale of the three-fourths interest be completed, but the sheriff then cry off the entire four-fourts interest in the land. We know of no authority for a sale in this manner and since John D. Isbell's interest is subject to the lien for purchase money to the same extent as the other interests, he has no right to withhold it from sale in that manner. Whether or not he should be granted the right to discharge the lien as to his interest by an unconditional payment before a sale of one-fourth of the purchase money debt is not before us for decision. The order of sale should direct that the land be sold as a unit and that one-fourth of the amount realized upon the sale in excess of the amount due for purchase money be paid to John D. Isbell. In order that this may be done, the judgment should expressly decree what portion thereof was for purchase money, including interest and attorney's fees.

We approve the holdings of the Court of Civil Appeals and accordingly its judgment, which reverses the judgment of the

trial court and remands the case thereto with instructions, is affirmed.

Opinion adopted by the Supreme Court July 9, 1941.

Rehearing overruled October 8, 1941.