**RAY et ux. v. METZGER.**
No. 14421.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 2, 1942.

Rehearing Denied Nov. 6, 1942.

Mays & Mays, of Fort Worth, for appellants.

Arthur Haddaway and Fay W. Prescott, both of Fort Worth, for appellee.

SPEER, Justice.

A. S. Metzger, as plaintiff, sued defendants T. R. Ray and his wife, Emma Ray, to recover on a note in the principal sum of $550, together with interest and attorney's fees, and to foreclose a deed of trust lien securing it, covering lots 1, 2, 3, 4, 7, 8, 9 and 10, in the T. R. Ray Subdivision of the 3¾ acres of land, a part of the T. Akers Survey, in Tarrant County, Texas. Other parties were named as defendants under allegations that they were asserting an interest in the land, but they filed disclaimers and need not be further mentioned.

Defendants Ray and wife answered by general denial and special pleas that the land in controversy was, prior to and at the time the note and deed of trust were executed by them, a part of their homestead; that they had been for several years past and at said time actually occupying and using the land as a homestead for themselves and their family.

By supplemental petition, plaintiff pleaded that the Rays acquired the whole tract of 3¾ acres by deed dated August 1, 1934, and on July 16, 1938, the defendants executed a plat of said tract, cutting the land into ten lots known as the T. R. Ray Subdivision, and had same recorded in the deed records of Tarrant County; that defendants subdivided said tract into lots, with the intention of selling all of said lots except No. 6, which they retained for homestead purposes; that they had previously lived on that lot and lived there at the time of the execution of the note and deed of trust; that defendants told plaintiff prior to the execution of the note and lien that they had so divided the property with the intention of selling all but lot No. 6, so reserved as a homestead, and that they had no intention of ever using said other lots, or any part thereof, in connection with their said homestead; that plaintiff relied upon said statements so made by defendants and but for same he would not have parted with the consideration paid by him and that defendants knew at the time plaintiff so relied thereon. Further allegations were made that at the time the note and deed of trust were executed and the money paid by plaintiff, defendants were not using said lots in any way in connection with their said homestead on lot No. 6. By a trial amendment plaintiff alleged that if defendants ever used the lots for homestead purposes, upon which plaintiff asserted the lien, said defendants had abandoned same as a part of their homestead prior to the time they executed the note and deed of trust involved in this suit.

Trial was to a jury on special issues. The verdict was (1) defendants abandoned for homestead purposes those lots against which the lien was sought to be foreclosed; (2) the lots were not in use by defendants for purposes of a home when the note and deed of trust were executed; (3) defendants did not abandon said property as a homestead after the execution of the note and deed of trust; (4) at the time of the execution of the note and deed of trust, T. R. Ray told plaintiff that he was not occupying and using said lots for homestead purposes in connection with the house in which he lived; (5) plaintiff relied upon said statements by defendant T. R. Ray; and (6) the entire premises were not being used and occupied by defendants as a homestead.

On the verdict, judgment was entered for plaintiff for the amount of his debt against T. R. Ray and for foreclosure of the deed of trust lien as against both defendants. Motion for new trial made by defendants was overruled and from the judgment entered appeal was perfected.

Defendants do not complain of the judgment for debt but challenge that part foreclosing the lien. The ten points presented for reversal may be grouped by us into three, as follows: (1) Error of the court in refusing to instruct a verdict for defendants; (2) error in submitting issues of fact to the jury; and (3) error in admitting testimony of witnesses that defendants had said to them the land in question was not their homestead and that they were not using same as such, prior to and at the time the note and deed of trust were executed.

No error is presented in the failure of the court to instruct a verdict for defendants, based upon the asserted grounds by defendants that the undisputed testimony shows they actually occupied and were using the property for homestead purposes at the time the note and deed of trust were executed. If the record supported the contention of defendants, their position would be well taken, but it finds no support in the record. We shall discuss this point further under the next group of points.

Error is assigned because issues were submitted to the jury on the questions

above indicated by the verdict, because, as claimed by defendants, there was no evidence to warrant such submissions and because there was no evidence to support the jury verdict.

██ It is now too well settled to require citation of authorities that where testimony is conflicting and is of such a nature that a jury could reasonably find either way, the verdict must be respected by the appellate court if there is any testimony of probative value to support the finding. It is equally well settled that no instructed verdict should be given, if to consider all the testimony against the proposed instructed verdict in its most favorable light to the one against whom the verdict would have been given under the request, a jury might have found to the contrary.

██ We are fully aware of the constitutional provisions in this state inhibiting the mortgaging of the homestead for any other purpose than those therein named. We are also familiar with the line of decisions in this state which in effect hold that if the homestead claimant is in actual possession of and is occupying and using premises for homestead purposes, his declarations and representations (oral or written) to the contrary, will not deprive him of the constitutional protection against encumbrances of the homestead. 22 Tex.Jur., pp. 179, 180, Sects. 124, 125 and 126. There is competent evidence in this case tending to show that defendants purchased the 3¾ acres of ground located outside of any city, town or village, although located about a mile and a half from Birdville. In the locality of this property many people resided on homes ranging in tracts from the size of defendants' to ten or twenty acres and were engaged in truck raising. That after defendants purchased the tract above referred to, they moved into the house, cultivated portions of the tract in vegetables; the number of years they so cultivated it and whether they cultivated and used the ground the year before and the year in which the note and mortgage were given is controverted by the testimony. Witness Clarence Jones, who showed himself to be familiar with the property and saw it a time or two each week over a period of several years, said a short time before the note and deed of trust were executed that T. R. Ray came to him and said he was cutting the tract up and wanted to sell it; Ray wanted witness to build some houses on it and sell the lots with houses on them; witness asked him about his homestead rights and Ray said his homestead, as platted, would be on lot No. 6; Ray showed witness the plat and told him he had no use for the lots and did not figure on ever using them; Ray wanted to get the money out of the lots or borrow some money on them; that he was not using them at that time. The witness said the lots had not been used the year before nor were they being used the year of the loan transaction; that they were covered with grass and weeds like any other vacant lot. The witness did not desire to make a deal on the lots but told plaintiff about Ray's request and in that way plaintiff and defendant began their negotiations. Plaintiff testified that Ray exhibited to him the blueprint of his subdivision and drove him out to inspect the property; that he observed defendants' house and improvements and defendant T. R. Ray stated that they were on lot six and he wanted to sell all the others or make a loan on them to put into a restaurant business; that defendant said the lots offered as security were not used or connected with his homestead, which was on lot six; that lot was 136 feet wide and those offered plaintiff were 80 feet wide; all except lot No. 6 were grown up in weeds and showed no signs of cultivation; that Ray said he was not using these lots in connection with his home; that he wanted to sell them but did not want "shotgun" houses built on them. Plaintiff further testified that while they were inspecting the property, Mr. Ray pointed out the stakes set at the corners of the different lots, in accordance with the plat exhibited. That Ray wanted an arrangement made in the papers by which, if he sold a lot, he could pay so much on the note and get a release of the lot sold.

The deed record containing the plat was in evidence, showing it to have been executed and acknowledged before a Notary Public on June 16, 1938, by T. R. Ray and recorded on the same day. The note and deed of trust here involved were executed on August 5, 1938. The note and deed of trust were executed by defendants as grantors and among other things the deed of trust contains this language: "The above described property is not now part of the homestead of the grantors, grantors here and now expressly designate lot No. 6 of the above described subdivision as their homestead, and expressly disclaim any homestead interest in any other lots in

said subdivision." There is another provision in the deed of trust, whereby if grantors should pay $75 on the indebtedness, grantee would release one of the lots so covered by the deed of trust. Lots Nos. 5 and 6 of the subdivision were not covered by the mortgage and it appeared from the testimony that grantors reserved No. 5 in contemplation of giving it to one of their daughters for a building site.

Mr. Lipscomb, the attorney who drew the papers involved in the loan transaction, testified somewhat in detail as to similar statements made by T. R. Ray, in the presence of his wife, relating to their homestead being on Lot 6, and that the lots covered by the deed of trust were not occupied or used by the Rays in connection with their homestead on said lot six.

■ We have not attempted to refer to all of the testimony on the points involved but only enough to show that there was substantial testimony sufficient to take the issue of abandonment of the parts covered by the mortgage to the jury.

Irrespective of previous homestead rights, defendants may have at one time had in the property, we have no difficulty in concluding that all or any part of the land could be abandoned by them for homestead or any other purpose.

■ Whether or not lands constitute a homestead depends at least to some extent upon the intentions of the owner; perhaps the best evidence of that intention is occupancy and use. When the right once attaches it presumptively continues until abandoned by the claimant. The burden is on one who asserts abandonment to establish it as a fact by competent and convincing proof. 22 Tex.Jur., Sect. 53, p. 81. This burden of proof may be discharged by circumstances, and evidence bearing upon the intention of the claimant to abandon it. 22 Tex.Jur., Sects. 55 and 56, pp. 84, 85. One may as certainly abandon a part of a tract as homestead as he may the whole, if done in good faith and by acts certainly evidencing such intention, even though the part claimed to be abandoned is contiguous to that part retained as a homestead. 22 Tex.Jur., Sect. 59, p. 89. Whether or not there was an intention to abandon parts of property as a homestead will be determined as of the time the purported lien is attempted to be created on the property. 22 Tex.Jur., Sect. 6, p. 99.

Our courts have jealously guarded our constitutional inhibition of encumbering the homestead except for the purposes therein enumerated. The wisdom of these constitutional provisions cannot be successfully attacked. A sound public policy demands it. The law will not accept subterfuges in these respects for realities. But we have seen no case holding that a homestead claimant cannot, in good faith, abandon all or any part of his homestead, as such. Clearly, when abandoned as a homestead, with a bona fide intention of doing so, it ceases to be such.

We therefore conclude that the evidence relating to the abandonment by defendants of those parts of the former homestead covered by the deed of trust was sufficient to require the submission of that issue to the jury, and that asserted errors therefor must be overruled. It necessarily follows that since this question was proper for jury determination, no instructed verdict for defendants should have been given.

■ We overrule the points raised in the third group of assignments, which complain of the admission in evidence of declarations of defendants tending to prove their intentions to abandon the lots covered by the mortgage as part of their homestead. Their declarations made prior to and contemporaneously with executing the note and deed of trust were admissible as declarations against interest, and, if believed by the jury, were persuasive of circumstances tending to establish it as a fact. Such declarations were properly considered in connection with other circumstances, such as causing the land to be divided into lots and platting it with markers at the several corners; the recordation of the plat and exhibiting it to plaintiff during the negotiations and to the disinterested witness Clarence Jones, along with the statements that Lot No. 6 was the homestead and that they were not using the other lots for homestead purposes and had no intention of doing so in the future. In this connection there was testimony to the effect, although contradicted by defendants, that they had not used the property in connection with their home, during the preceding year and were not using it at the time of the transaction here involved.

Defendants cite and rely upon Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, and Rutland Savings Bank v. Isbell, 137 Tex. 432, 154 S.W.2d 442. As we read those cases, the principle of aban-

donment was not involved. They were decided upon the rule of estoppel, based upon declarations of the claimants at times when they were in fact openly occupying and using the property for homestead purposes. The rule there announced was in effect that when homestead claimants were actually occupying and using property for homestead purposes, they would not be estopped to claim those rights by their declarations to the contrary.

The fact issue of whether or not defendants had previously abandoned for homestead purposes those lots covered by the mortgage was fairly submitted to the jury and determined against defendants' contention and if we thought otherwise, we have no authority to substitute our judgment in this respect for that of the jury.

All points of error are overruled, and the judgment of the trial court is affirmed.